No. 22-50064

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
──────

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FRANCISCO LUCAS, Jr.,

Defendant-Appellant.
──────

Appeal from the
United States District Court
for the Central District of California
Honorable James V. Selna Presiding
──────

**Brief of Amici Curiae Ninth Circuit Federal Public and
Community Defenders in Support of the Defendant-Appellant
During Pendency of Rehearing En Banc**
──────

Jessica Agatstein
Vincent Brunkow
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
jessie_agatstein@fd.org
Attorneys for Amici Curiae

TABLE OF CONTENTS

PAGE

STATEMENT OF INTEREST OF AMICI AND DISCLOSURE STATEMENT ......... 1

SUMMARY OF ARGUMENT ......................................................................... 2

ARGUMENT ............................................................................................. 4

I.   This Court's rule is properly grounded in due process principles, as recognized by many judges and academic articles. ......................................................................... 4

II.  The clear and convincing standard works in practice to protect fundamental fairness in extreme cases. ........................ 12

III.  This Court should clarify its test to incorporate the three factors it identified last year in *Lonich*. .................................... 19

CONCLUSION .......................................................................................... 25

ADDITIONAL COUNSEL ........................................................................... 25

CERTIFICATE OF COMPLIANCE ............................................................... 28

TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Alleyne v. United States,*
    570 U.S. 99 (2013)................................................................................ 5

*Jones v. United States,*
    574 U.S. 948 (2014)................................................................................ 7

*McMillan v. Pennsylvania,*
    477 U.S. 79 (1986)......................................................................... *passim*

*Townsend v. Burke,*
    334 U.S. 736 (1948)................................................................................ 4

*United States v. Armstead,*
    552 F.3d 769 (9th Cir. 2008)......................................................... 21, 22

*United States v. Barragan,*
    871 F.3d 689 (9th Cir. 2017)................................................................ 6

*United States v. Bell,*
    808 F.3d 926 (D.C. Cir. 2015)........................................................ 7, 10

*United States v. Fisher,*
    502 F.3d 293 (3d Cir. 2007) ................................................................ 8

*United States v. Franklin,*
    18 F.4th 1105 (9th Cir. 2021) .............................................................. 4

*United States v. Grier,*
    475 F.3d 556 (3d Cir. 2007) ............................................................ 8, 9

*United States v. Hopper,*
    177 F.3d 824 (9th Cir. 1999)............................................................. 17

*United States v. Hymas,*
  780 F.3d 1285 (9th Cir. 2015)........................................................... 14, 15

*United States v. James,*
  2019 WL 2516413 (D.D.C. June 18, 2019)............................................... 11

*United States v. Jordan,*
  256 F.3d 922 (9th Cir. 2001)........................................................... 20, 21

*United States v. Khatallah,*
  41 F.4th 608 (D.C. Cir. 2022) .................................................................. 10

*United States v. Long,*
  328 F.3d 655 (D.C. Cir. 2003) .................................................................... 7

*United States v. Lonich,*
  23 F.4th 881 (9th Cir. 2022) ........................................................... *passim*

*United States v. Magee,*
  834 F.3d 30 (1st Cir. 2016) ......................................................................... 8

*United States v. Mezas de Jesus,*
  217 F.3d 638 (9th Cir. 2000)......................................................... 6, 15, 16

*United States v. Montoya,*
  __ F.4th __, 2023 WL 5945973 (9th Cir. Sept. 13, 2023) ......................... 2

*United States v. Pineda-Doval,*
  614 F.3d 1019 (9th Cir. 2010)................................................................... 14

*United States v. Reuter,*
  463 F.3d 792 (7th Cir. 2006)............................................................. 10, 11

*United States v. Ross,*
  29 F.4th 1003 (8th Cir. 2022) .................................................................. 10

*United States v. Sabillon-Umana,*
  772 F.3d 1328 (10th Cir. 2014)................................................................... 7

*United States v. Simpson,*
  741 F.3d 539 (5th Cir. 2014)...................................................................... 7

*United States v. St. Hill,*
  768 F.3d 33 (1st Cir. 2014) ........................................................................ 8

*United States v. Staten,*
  466 F.3d 708 (9th Cir. 2006)................................................................. 6, 24

*United States v. Valensia,*
  222 F.3d 1173 (9th Cir. 2000)................................................. 19, 20, 21, 23

## OTHER AUTHORITIES

Judy Clarke, *The Need for a Higher Burden of Proof for Factfinding
  Under the Guidelines*, 4 Fed. Sent'g Rep. 300 (1992)............................. 11

W. Crews Lott, Comment, *Balancing Burdens of Proof and Relevant
  Conduct: At What Point Is Due Process Violated*,
  45 Baylor L. Rev. 877 (1993) ................................................................... 11

Anthony LoMonaco, *Disproportionate Impact: An Impetus to
  Raise the Standard of Proof at Sentencing*,
  92 N.Y.U. L. Rev. 1225 (2017)........................................................... 11, 12

*Seventh Circuit Upholds Use of Acquitted Conduct to Triple
  Sentencing Exposure on a Preponderance of the Evidence*,
  135 Harv. L. Rev. 2227 (2022)................................................................. 11

## STATEMENT OF INTEREST OF AMICI AND DISCLOSURE STATEMENT

The Ninth Circuit Federal Public and Community Defenders ("Amici") represent indigent defendants in this Court. As the institutional defenders for indigent defendants, these organizations have an interest in all federal criminal law and sentencing issues. Amici represent thousands of criminal defendants in federal sentencing proceedings every year, in district courts across the Ninth Circuit, from Anchorage to Billings to Honolulu to San Diego. They are intimately familiar with all aspects of the federal Sentencing Guidelines and the role that standards of proof play at sentencing. Amici believe that the outcome in this case will significantly affect their clients' right to receive fair sentences through fair sentencing procedures.

Amici affirm that no publicly held corporation owns stock in them. No counsel for either party authored this brief in whole or in part. And no party, party's counsel, person, or other entity contributed money to preparing this brief.

All parties have consented to this brief's filing.

## SUMMARY OF ARGUMENT

Suppose the following: A jury convicts three men of defrauding a bank. During their scheme, the bank went under. So did many other banks. The fraud took place in 2008. If the men caused their bank's collapse, their criminal sentences will be drastically higher. How certain should a trial judge be about the cause of the bank's failure before deciding to put the men in prison for an additional decade?

This Court has already answered this question. And it has already gotten it right. The trial judge should be more certain about what caused the bank to fail than if it was an element in a tort case, but less certain than if it was an element of the crime. *See United States v. Lonich*, 23 F.4th 881, 907–19 (9th Cir. 2022). This Court's answer stands on a foundational rule: "After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair.'" *United States v. Montoya*, ___ F.4th ___, 2023 WL 5945973, *3 (9th Cir. Sept. 13, 2023) (en banc) (cleaned up).

Amici write to make three points why this Court should keep, but fix, its rule applying the clear and convincing standard to uncharged facts that, if proven, result in extremely disproportionate sentencing increases.

First, judges across appellate and district courts, academic commentators, and the rule of this Circuit recognize that there are

2

significant due process concerns when an individual is convicted of one crime, but prosecutors seek a long sentence for other uncharged conduct or harms. Those concerns increase when the evidence would be insufficient to support a conviction for that second crime, or only tenuously establishes the additional conduct. Many judges are also unsettled by the use of acquitted conduct to support a long sentence— an issue this Court has uniquely and ably navigated for decades through the use of a clear and convincing standard.

Second, the clear and convincing standard works. Amici highlight examples of the standard ensuring fair sentences in this Circuit: in a bank fraud case, in which the government sought a sentence for terrorism; in a human-smuggling case, in which the government sought a sentence for murder; in a tax fraud case, in which the jury acquitted a defendant of violently obstructing tax proceedings, yet the government still sought a sentence for violent obstruction; and more.

Third, the Court should take this opportunity to simplify its test for when the clear and convincing standard applies. It is true that the current six-factor test is messier than needed. But the answer is not to take a sledgehammer to it when a scalpel will do.

Amici recommend this Court formally adopt the three-factor rule Judge Bress suggested when writing for the majority in *Lonich*, 23 F.4th at 910–16, and dispense with the no-longer-helpful factors. Pursuant to *Lonich*, this Court should require a clear and convincing

evidence standard for sentencing facts when: (i) they are based on conduct or harm for which the defendant was not convicted; (ii) they increase the offense level by four or more; and (iii) they increase the sentencing range by double or more. A sentencing increase is based on conduct or harm for which a defendant was not convicted when "uncharged or acquitted conduct is in the mix," or when "there is a notable mismatch between the scope of the criminal conviction[]" and the harm serving as the foundation for a sentencing enhancement. *Lonich*, 23 F.4th at 915. This rule is consistent with this Court's recent, detailed explanation of the due process justifications for applying the clear and convincing standard in extreme situations. *Id*. at 910–16.

A<span style="font-variant:small-caps">RGUMENT</span>

I. **This Court's rule is properly grounded in due process principles, as recognized by many judges and academic articles.**

Criminal defendants have always had a due-process-protected interest in fair sentencing—before, during, and after the mandatory Guidelines regime. Seven decades ago, the Supreme Court made that clear. Being "sentenced on the basis of assumptions" that lack indicia of reliability or are "materially untrue" "is inconsistent with due process of law." *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Franklin*, 18 F.4th 1105, 1115–17 (9th Cir. 2021) (describing the development of case law since *Townsend*).

4

Generally, when a sentencing court relies on facts not found by a jury, finding those facts by a preponderance meets this due-process interest in fairness. But, in the 1980s, the Supreme Court reasoned that the due process protections afforded during sentencing may "depend on differences of degree." *McMillan v. Pennsylvania*, 477 U.S. 79, 91 (1986).

In *McMillan*, the Court held adequate under due process an increase in a sentence based on a fact found by a preponderance of the evidence. It did so, in part, because the increase gave "no impression of having been tailored to permit the . . . finding to be a tail which wags the dog of the substantive offense." *Id.* at 88. A separate Sixth Amendment holding in *McMillan*—that a fact increasing the statutory minimum sentence can be found by a judge—has since fallen away. *See Alleyne v. United States*, 570 U.S. 99 (2013).

*McMillan*'s Fifth Amendment due process reasoning remains intact. A sentencing fact can usually be found by a preponderance of the evidence. But due process might require other results "depend[ing] on differences of degree," including potentially when a fact found at sentencing is "a tail which wags the dog of the substantive offense." *McMillan*, 477 U.S. at 91, 88.

This Court has rightly continued to apply *McMillan*'s reasoning in its fleshed-out form. "[T]he Due Process clause requires the application of a clear and convincing evidence standard when an enhancement

5

based upon uncharged conduct has an extremely disproportionate effect on the length of a defendant's sentence." *United States v. Staten*, 466 F.3d 708, 718–20 (9th Cir. 2006) (cleaned up). For the last two and a half decades, this Court has both applied the clear and convincing standard in extreme circumstances and recognized the underlying due process rationale for doing so. *See United States v. Mezas de Jesus*, 217 F.3d 638, 642–43, 645 (9th Cir. 2000) (describing a more-than-doubling of a sentence based on an uncharged crime as "the quintessential 'tail which wags the dog of the substantive offense'") (quoting *McMillan*, 477 U.S. at 88); *Lonich*, 23 F.4th at 910–16 (recently describing the due process justifications for this Court's rule). In so doing, this Court "ensure[s] that legislatures 'cannot evade [the constitutionally required standard of proof] by reclassifying an element of a crime as a sentencing factor,' thereby depriving a defendant of important criminal procedural protections." *United States v. Barragan*, 871 F.3d 689, 717 (9th Cir. 2017) (alterations in original).

If anything, members of the Supreme Court have in recent years indicated a desire to ratchet *up* the protections applied to findings of fact at sentencing—not, as the government seeks here, to ratchet them down. In 2014, joined by Justices Thomas and Ginsburg, Justice Scalia expressed concern that "the Courts of Appeals have uniformly taken our continuing silence to suggest that the Constitution *does* permit otherwise unreasonable sentences supported by judicial factfinding, so

long as they are within the statutory range." *Jones v. United States*, 574 U.S. 948 (2014) (Scalia, J., dissenting from denial of certiorari). They warned, "This has gone on long enough." *Id.*

While on the Tenth Circuit, then-Judge Gorsuch agreed. He wrote, "It is far from certain whether the Constitution allows" a district judge to "either decrease or increase a defendant's sentence (within the statutorily authorized range) based on facts the judge finds without the aid of a jury or the defendant's consent." *United States v. Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014) (Gorsuch, J.). And, the following year, then-Judge Kavanaugh emphasized, "Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial." *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring in denial of rehearing en banc).

The rule that due process requires a higher standard of proof for sentencing facts with an extreme effect is one that judges and legal commentators across the country have found persuasive. That is one reason why several circuits have thus far declined to decide whether to apply a heightened standard in some cases. *See United States v. Simpson*, 741 F.3d 539, 559 (5th Cir. 2014); *United States v. Long*, 328 F.3d 655, 669–72 (D.C. Cir. 2003).

It is also why, even when circuits have rejected a higher standard of proof, members of those courts have expressed reservations in well-developed, thoroughly reasoned, and vigorous separate opinions. *See, e.g.*, *United States v. Magee*, 834 F.3d 30, 38 (1st Cir. 2016) (Torruella, J., concurring) (reiterating concerns developed further in *United States v. St. Hill*, 768 F.3d 33, 36 (1st Cir. 2014) (Torruella, J., concurring)); *United States v. Grier*, 475 F.3d 556, 573–621 (3d Cir. 2007) (en banc) (Ambro, J., concurring in the judgment); *United States v. Fisher*, 502 F.3d 293, 311–13 (3d Cir. 2007) (en banc) (Rendell, J., concurring).

In these separate opinions, judges have identified serious due-process problems when individuals are charged with "relatively minor crimes," but then face "significantly enhanced terms of imprisonment" based on "other crimes that have not been charged (or, if charged, have led to an acquittal)." *St. Hill*, 768 F.3d at 39 (Torruella, J., concurring). "The practice of arguing for higher sentences based on uncharged and untried 'relevant conduct' . . . seems like an end-run around the[] basic constitutional guarantees afforded to all criminal defendants." *Id.* at 41; *accord Fisher*, 502 F.3d at 312 (Rendell, J., concurring) (writing that "the defendant's right to due process is implicated when it appears that a defendant is being sentenced primarily for a crime other than the crime of conviction, such as when the defendant's sentence is based predominantly on criminal conduct collateral to the crime of conviction").

Separate opinions have also expressed concern that majority opinions have ignored due process guardrails when dispensing with higher burdens of proof at sentencing in extreme cases. As Judge Ambro in the Third Circuit wrote, "It is somewhat perplexing . . . that the majority here invokes 'the reasoning of *Apprendi*' and 'the holding of *Booker*'—both Sixth Amendment cases—to explain its Fifth Amendment due process ruling in this case." *Grier*, 475 F.3d at 576 (Ambro, J., concurring in the judgment).

Rather, Judge Ambro explained, there is only one Supreme Court case that controls the due process question at hand: *McMillan*. *Grier*, 475 F.3d at 576–82 (Ambro, J., concurring in the judgment). And *McMillan* "set[] out various conditions that, if found to be otherwise, can lead to the conclusion that a sentencing factor must be proven to a higher evidentiary standard despite the general rule." *Id.* at 580. Those conditions include increases in sentences based on facts that "'create[] a separate offense calling for a separate penalty,'" "'relieve the prosecution of its burden of proving guilt,'" or "'evade the commands of *Winship*' that elements of a crime be proven beyond a reasonable doubt." *Id.* (quoting *McMillan*, 477 U.S. at 87–89). "Lower courts eventually distilled these considerations into a single, metaphorical standard used in *McMillan* itself—'a tail which wags the dog.'" *Id.* (quoting *McMillan*, 477 U.S. at 88). "[W]hat is important is that, just as much as its general holding, *McMillan*'s canine metaphor is still the

9

Fifth Amendment's mandate when it comes to the burden of proof for sentencing factors." *Id.*

Further, even in circuits that have disregarded the foundational due process roots of a clear and convincing standard from *McMillan*, many appellate and district judges are still wary of relying on a preponderance in extreme circumstances. They recognize it smacks of unfairness. Some suggest courts avoid it.

While on the D.C. Circuit, then-Judge Kavanaugh suggested that "district judges would do well to heed" concerns about this unfairness, and "in appropriate cases," "avoid basing any part of the ultimate sentence on acquitted or uncharged conduct." *Bell*, 808 F.3d at 928 (Kavanaugh, J., concurring in denial of rehearing en banc). He noted, "Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial." *Id.*; *accord United States v. Khatallah*, 41 F.4th 608, 651 (D.C. Cir. 2022) (Millett, J., concurring) (reiterating this point); *United States v. Ross*, 29 F.4th 1003, 1010 (8th Cir. 2022) (Erickson, J., concurring) ("urg[ing] district judges 'to disclaim reliance on acquitted or uncharged conduct' in future cases").

Writing for the Seventh Circuit, Judge Posner suggested, "A judge might reasonably conclude that a sentence based almost entirely on evidence that satisfied only the normal civil standard of proof would be

unlikely to promote respect for the law or provide just punishment for the offense of conviction." *United States v. Reuter*, 463 F.3d 792, 793 (7th Cir. 2006). As one district judge who came to that reasonable conclusion explained: "To say the least, 'trial by sentencing enhancements' was not what Congress had in mind when it blessed the federal Sentencing Guidelines regime!" *United States v. James*, 2019 WL 2516413, *2–*3 (D.D.C. June 18, 2019).

And academic commentators largely agree: The Ninth Circuit's rule is the one most supported by the due process principles that constrain sentencing proceedings. *See* Anthony LoMonaco, *Disproportionate Impact: An Impetus to Raise the Standard of Proof at Sentencing*, 92 N.Y.U. L. Rev. 1225 (2017); *Seventh Circuit Upholds Use of Acquitted Conduct to Triple Sentencing Exposure on a Preponderance of the Evidence*, 135 Harv. L. Rev. 2227 (2022); W. Crews Lott, Comment, *Balancing Burdens of Proof and Relevant Conduct: At What Point Is Due Process Violated*, 45 Baylor L. Rev. 877 (1993); Judy Clarke, *The Need for a Higher Burden of Proof for Factfinding Under the Guidelines*, 4 Fed. Sent'g Rep. 300 (1992).

As one article explains, when "the cost of error can be years of wrongful imprisonment," relying on a clear and convincing standard not only satisfies the due process test. LoMonaco, *Disproportionate Impact*, 92 N.Y.U. L. Rev. at 1252. It also "serve[s] a more symbolic goal:

11

reflecting societal views about the gravity of depriving individuals of their liberty." *Id.* at 1253.

In sum, across courts and commentators, there are many voices concerned with the fairness of sentencing a defendant for both crimes and harms of which they were not convicted. While the Ninth Circuit has the most developed rule protecting due process rights in that context, it is far from alone in acknowledging those rights exist.

## II. The clear and convincing standard works in practice to protect fundamental fairness in extreme cases.

This Court's clear and convincing rule not only protects the essential due process rights people retain at sentencing. It also makes a real difference in the courtroom.

In each of the cases that follow, this Circuit's existing standard has protected the due-process interest in a reliable, fair sentencing process. This Court's standard has ensured that, if a district court is going to sentence someone for conduct beyond that for which they were convicted, or harms they may not have caused, the court is sure enough about it to protect the due-process interest in individual liberty.

*United States v. Adam Shafi.* A young Muslim man from the Bay Area lived at home, depressed, spending his days on the Internet. During his family's monthlong trip to visit extended family in Cairo, he disappeared; he had gone to Istanbul with a friend. In the meantime, his family called the U.S. Embassy. He returned to Cairo two days

12

later, and the FBI began monitoring him. His Google searches and calls
with friends were all over the place. Some related to terrorist
organizations in Syria. Many others related to going to Yosemite and
Death Valley, to get away from home. The following year, when he
bought a ticket to Istanbul and arrived at the airport, he was charged
with attempting to be a soldier for a terrorist organization. A jury hung
on that charge, 8 to 4 in favor of not guilty. *United States v. Shafi*, No.
15-CR-582-WHO, ECF Nos. 371, 351–54, 15 (N.D. Cal.).

After trial, he pled guilty to cashing a bad check. He'd cashed a
check that he knew was fraudulent to buy his plane ticket to Istanbul.
*Id.* at ECF No. 345, 349. For sentencing, the government argued, as it
had to the jury, that he was flying to be a soldier for a terrorist
organization. It asked for a sentence of ten years, instead of the bank
fraud Guideline range of under one year. The district court disagreed:
"To me, the evidence showed a confused and depressed young man,"
who, "as best I could tell, had no plan on how or what he was going to
do." *Id.* ECF No. 371 at 13. "He expressed no plan on what he would do
when he got to Istanbul. The last time he turned around and came
home. And there's no commitment to join any particular terrorist group
. . . . And the jury hung in his favor with respect to that, as to whether
he had committed a crime." *Id.* at 13–14. Ultimately, the district court
noted, "I'm looking at clear and convincing. If the standard was

13

preponderance of the evidence, it would be a much closer case, but it's not." *Id.* at 14. It imposed a time-served sentence. *Id.* at 27.

*United States v. Adan Pineda-Doval*. A human smuggler drove recklessly. When his car of smuggled people crashed, five people died. He argued he should be sentenced for the reckless vehicular conduct of which he was convicted—smuggling resulting in death—in a range of around 15 to 18 years. Applying a preponderance of the evidence standard, the district court found it more likely than not that he had, instead, committed second-degree murder. It sentenced him to life imprisonment. *United States v. Pineda-Doval*, 614 F.3d 1019, 1039–42 (9th Cir. 2010).

This Court held that was the wrong standard. If the district court was going to find that the defendant acted with "malice aforethought" without that question being put to a jury, sentencing him to life in prison, it needed to be really sure. *Id.* at 1042. It remanded for the district court to apply a clear and convincing evidence standard. *Id.* After additional proceedings, and an additional appeal, the district court ultimately sentenced him to 15 years. *United States v. Pineda-Doval*, No. 06-CR-778-SMM, ECF No. 219 (D. Ariz. 2013).

*United States v. Aaron Hymas*. A married couple ran a business flipping houses. The government indicted them for submitting twenty fraudulent loan applications between 2005 and 2007. The couple pleaded to fraud for a single loan in 2007. They argued that the earlier

14

applications were not fraudulent; only when their house-flipping business deteriorated in 2007 did they begin lying on loan applications. Using a preponderance standard, the district court found all twenty loan applications fraudulent. It sentenced the husband and wife based on its finding that, more likely than not, all three years of their business involved a conspiracy to commit fraud. *United States v. Hymas*, 780 F.3d 1285, 1288–91 (9th Cir. 2015).

This Court reversed. "[T]he government did not charge [the husband] with a conspiracy to defraud that included the other acts of fraud alleged in the indictment. He only pled to one count of fraud regarding a specific loan transaction. He had neither need nor opportunity to contest the alleged conspiracy, and he cannot be sentenced using the lower standard as if he had challenged a conspiracy charge." *Id.* at 1292. It remanded for the district court to use a clear and convincing standard. *Id.* It is not clear what the district court found on remand, but it ultimately imposed the same below-Guidelines sentence. *United States v. Aaron Hymas*, No. 12-CR-45-EJL-1, ECF Nos. 146–47 (D. Idaho 2015).

*United States v. Pedro Mezas De Jesus*. Two men were charged in state court with kidnaping. The state prosecutors dropped the case because the alleged victim told contradictory stories. Then federal prosecutors charged both men only for being undocumented and in possession of a gun. At sentencing, the probation officer recommended a

sentence of five years, rather than two, based on the gun possession and the kidnaping. Applying a preponderance standard, and looking only to the alleged victim's contradictory statements to police because he had since disappeared, the sentencing court thought the kidnaping probably happened. Based in part on the allegation of kidnaping, the court chose a five-year sentence. *Mezas de Jesus*, 217 F.3d at 640–41.

This Court reversed and explained that the man "was charged and convicted of being an undocumented immigrant in possession of a firearm only. Yet he was sentenced as if he had used the firearm in connection with a kidnaping—an offense for which he was never charged let alone convicted." *Id.* at 645. "The uncharged kidnaping thus became the quintessential 'tail which wags the dog of the substantive offense.'" *Id.* (quoting *McMillan*, 477 U.S. at 88).

On remand, the district court resentenced the man to just under two years. *United States v. Pedro Mezas-De Jesus*, No. 98-CR-16-GLT, ECF No. 169 (C.D. Cal. 2000).

*United States v. George Reed.* A group of eight people got together to form a creatively fraudulent tax-exempt religious organization. When the IRS began investigating the organization, its agents received threatening letters. The threats culminated in one member of the group threatening an agent in person, with a gun. The government charged additional members of the group with aiding and abetting that gun assault; the jury acquitted all those charged with aiding and abetting,

and convicted only the one man who actually held the gun. At sentencing, the district court still held another one of the seven members responsible for the violence. Applying a preponderance standard, and even though neither the threatening letters, nor the in-person assault, formed the grounds of this group member's convictions, the district court held this member responsible. *United States v. Hopper*, 177 F.3d 824, 828–29, 833 (9th Cir. 1999).

Once again, this Court reversed. That other members of the fraudulent group had used violence or threats of violence did not mean this particular member did. Although the court could sentence this particular man based on acquitted conduct, it had to be extra careful in doing so. This Court remanded for the sentencing court to use a clear and convincing evidence standard. *Id.* at 833. On remand, the district court reduced this particular man's sentence by 12 months under the heightened standard. *United States v. George L. Reed*, No. 95-CR-5174-LJO-3, ECF Nos. 996, 1401 (E.D. Cal. 2000).

*United States v. David Lonich.* To end where this brief began: A jury convicted three men of defrauding a bank. During their scheme, the bank went under. The scheme took place during the 2008 financial crisis; many other banks also went under. At sentencing, the district court found by a preponderance of the evidence that the men's fraud caused the bank to fail. It thus calculated their Guideline range 20 levels higher, based on the federal government's entire monetary loss

from the bank's collapse, rather than just the bank's loss due to the fraud. It sentenced two men to 100 months of incarceration, and the remaining man to 80 months. *Lonich*, 23 F.4th at 888–90, 907.

This Court reversed. It explained that over two-thirds of the federal government's monetary loss "reflected uncharged or acquitted conduct." *Id.* at 915. Even more importantly, "[t]he jury's guilty verdicts do not compel the conclusion—or even plausibly demonstrate—that the defendants through their criminal conduct were responsible for [the bank's] collapse." *Id.* And none of the material submitted post-sentencing showed that the men's conduct caused the bank to fail. Instead, "other factors internal and external to the bank may have contributed to the bank's collapse." *Id.* at 917.

On remand on an open record, the district court found that the government "ha[d] not met its burden to show by clear and convincing evidence that the defendants' criminal conduct caused [the bank's] collapse." *United States v. Sean Cutting et al.*, No. 17-CR-139-SI, ECF No. 531 at 3–4 (N.D. Cal. 2022). Indeed, it found it had "fallen far short." *Id.* at 5. The court resentenced each of the men to time served. *Id.* at ECF Nos. 568–70.

The above six cases are a sampling of how this Court's clear and convincing evidence rule successfully polices the use of uncharged conduct and harm to disproportionately enhance sentences. They're examples of keeping sentencing fair. The clear and convincing rule

18

applies only when it matters—in extreme circumstances, when a bank fraud conviction could result in a terrorism sentence, when a people-smuggling conviction could result in a second-degree murder sentence, or when a single-act fraud conviction could result in a multi-year fraud conspiracy sentence. In these extreme cases, this Court's rule has for decades successfully accounted for uncharged conduct that is ultimately "a tail which wags the dog." *McMillan*, 477 U.S. at 88.

## III. This Court should clarify its test to incorporate the three factors it identified last year in *Lonich*.

This Court's clear and convincing rule has long provided due-process guardrails in extreme sentencing situations. But, as this Court has recognized, its six-factor test used to implement these guardrails is not "a model of clarity." *Lonich*, 23 F.4th at 911 (cleaned up); *see United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000) (creating six-factor test).

As Judge Bress explained for this Court in *Lonich*, the test can and should be simplified. To implement due process protections at sentencing, this Court should formally adopt the approach taken in *Lonich*, 23 F.4th at 916.

This Court should hold that the clear and convincing standard applies when an enhanced sentence (i) is based on conduct or harm for which the defendant was not convicted, (ii) increases the offense level by four or more, and (iii) increases the sentence by double or more. A

19

sentencing increase is based on conduct or harms beyond that for which a defendant was convicted when "uncharged or acquitted conduct is in the mix," or when "there is a notable mismatch between the scope of the criminal conviction[]" and the harms serving as the foundation for a sentencing enhancement. *Lonich*, 23 F.4th at 915.

As it currently stands, this Court looks to six non-exhaustive factors to decide whether the circumstances at sentencing required a clear and convincing standard of proof. Those are:

(1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment;

(2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment;

(3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment;

(4) whether the increase in sentence is based on the extent of a conspiracy;

(5) whether the increase in the number of offense levels is less than or equal to four; and

(6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

*United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001) (quoting *Valensia*, 222 F.3d at 1182) (cleaned up).

The first two factors are "to some extent eclipsed by subsequent developments in Sixth Amendment case law, including that the Sentencing Guidelines are now merely advisory in nature." *Lonich*, 23 F.4th at 911. They "do little independent work." *Id.* This Court should formally dispense with them. Its clear and convincing rule comes from the Fifth Amendment's guarantee of due process, rather than the Sixth Amendment's protections.

The third and fourth factors are, as *Lonich* explained, really "just . . . example[s] of another broader principle." *Id.* at 913. "[I]n considering whether the clear and convincing or preponderance standard should apply," "the critical issue" is "whether the enhancements were based on the conduct of conviction." *Id.* at 914.

This is ultimately an important "threshold inquiry." *Id.* at 916. It's one that gets to the heart of the due process principles at play. "[I]f a defendant has already been convicted of certain conduct (whether through a jury verdict or a guilty plea), enhancements that are based on the conduct of conviction do not require proof by clear and convincing evidence." *Id.* at 913. "[D]ue process concerns . . . are satisfied by a preponderance of the evidence standard [in that case] because the enhancements are based on criminal activity for which the defendant has already been convicted." *Id.* at 915 (quoting *United States v.*

21

*Armstead*, 552 F.3d 769, 777 (9th Cir. 2008)). Because the conduct or harms formed an element of the crimes of conviction, the defendant had both the incentive and the opportunity to challenge them at trial or to decide whether to plead guilty to them. *Lonich*, 23 F.4th at 913. By contrast, "if they are based on conduct for which the defendant was not convicted, the clear and convincing standard may apply." *Id.* at 914.

For example, in *Lonich*, the defendant's enhancements were based on both conduct and harms for which the defendant was not convicted, for two reasons. First, the unconvicted conduct: There was "a notable mismatch between the scope of the criminal convictions and the losses that supposedly drove the bank's failure." *Id.* at 915. For example, for one defendant, "over $7 million of the $10.3 million in loans" that formed the basis of his Guidelines adjustment "reflected uncharged or acquitted conduct." *Id.*

 Second, the unconvicted harms: The defendants' sentences involved "a substantial intermediate causation question" about the bank's collapse. *Id.* They "turne[d] on a wholly separate causal inquiry—the bank's failure—that [wa]s thoroughly disconnected from the jury's verdict." *Id.* Indeed, the "jury's guilty verdicts d[id] not compel the conclusion—or even plausibly demonstrate—that the defendants through their criminal conduct were responsible for [the bank's] collapse. In fact, the jury was not even permitted to hear evidence on why the bank failed." *Id.* Based on the evidence presented at

sentencing, "[f]rom a causation perspective, it [wa]s . . . unclear if the loans associated with defendants' criminal wrongdoing led to the bank's failure." *Id.* at 917. Under this Court's rule, that lack of clarity as to either conduct or harms was not enough.

While *Lonich* could not collapse the third and fourth factors as a three-judge panel, it identified their single animating principle. This Court should adopt its approach. It should collapse the third and fourth factors into one: "whether the enhancement is based on the conduct of conviction." *Id.* at 916. That inquiry considers whether a sentencing increase is based on conduct or harm beyond that for which the defendant was convicted.

Finally, *Lonich* explained that the fifth and sixth factors are really where the due-process action is. They give meat to the rule of *what* constitutes an extreme sentence. "In the typical case, the last two *Valensia* factors best capture the principle underlying our precedents." *Id.* at 911–12. That principle, of course, is that "when disputed sentencing enhancements significantly increase the sentence that would otherwise apply, due process can require the government to make a stronger showing." *Id.* at 912.

"Most commonly, the fifth and sixth factors will coincide." *Id.* "[W]hen the offense levels go up substantially, this will at some point generate a sentence that is more than twice the length of the 'relatively short sentence' that would have otherwise applied." *Id.* So, in *Lonich*, a

23

20-level enhancement resulting in advisory ranges "that were far more than double what they would have obtained absent the" bank-failure-findings, and "factors five and six thus strongly counsel[led] in favor of applying a clear and convincing standard to factual findings underlying defendants' disputed enhancements." *Id.*

Consistent with Judge Bress's opinion for the Court in *Lonich* and fundamental due-process guiderails at sentencing, this Court should adopt a simplified three-factor test for when uncharged conduct or harm results in an extreme and disproportionate sentence. Simplifying, but retaining, this Court's rule will vindicate the due-process guarantee applicable at sentencing. It will ensure that "due process continues to play a critical role with regard to the factual determinations inherent in criminal sentencing." *United States v. Staten*, 466 F.3d 708, 720 (9th Cir. 2006).

# CONCLUSION

This Court should adopt a clarified three-factor test that still protects the due process guarantee at sentencing in extreme cases, and remand to the three-judge panel for further proceedings.

Respectfully submitted,

Dated:  September 20, 2023

*/s/ Jessica Agatstein*
Jessica Agatstein
Vincent Brunkow
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5097
Telephone:  (619) 234-8467
jessie_agatstein@fd.org
Attorneys for Amici

**ADDITIONAL COUNSEL:**

Fidel Cassino-DuCloux
Federal Public Defender, District of Oregon
101 Southwest Main Street, Room 1700
Portland, OR 97204

Colin Fieman
Federal Public Defender, Western District of Washington
Westlake Center Office Tower
1601 Fifth Avenue, Suite 700
Seattle, WA 98101

Andrea George
Executive Director, Federal Defenders of Eastern Washington and Idaho
601 West Riverside Avenue, Suite 900
Spokane, WA 99201

John Gorman
Federal Public Defender, District of Guam and the Northern Mariana Islands
First Hawaiian Bank Building
400 Route 8, Room 501
Mongmong, GU 96910

Rachel Julagay
Executive Director, Federal Defenders of Montana, Inc.
104 2nd Street South, Suite 301
Great Falls, MT 59401

Salina M. Kanai
Federal Public Defender, District of Hawaii
Prince Kuhio Federal Building
300 Ala Moana Boulevard, Suite 7104
Honolulu, HI 96850

Jodi Linker
Federal Public Defender, Northern District of California
Phillip Burton United States Courthouse
450 Golden Gate Avenue, Suite 19-6884
San Francisco, CA 94102

Jamie McGrady
Federal Public Defender, District of Alaska
188 W Northern Lights Blvd, Suite 700
Anchorage, AK 99503

Nicole Owens
Executive Director, Federal Defender Services of Idaho
702 West Idaho Street, Suite 1000
Boise, ID 83702

Jon M. Sands
Federal Public Defender, District of Arizona
850 West Adams Street, Suite 201
Phoenix, AZ 85007

Rene L. Valladares
Federal Public Defender, District of Nevada
411 E. Bonneville Avenue
Las Vegas, NV 89101

Heather Williams
Federal Public Defender, Eastern District of California
801 I Street, 3rd Floor
Sacramento, CA 95814

CERTIFICATE OF COMPLIANCE
**9th Cir. Case Number 22-50064**

I am the attorney.

**This brief contains 5,616 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ x ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties;

[ ] a party or parties are filing a single brief in response to multiple briefs; or

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Jessica Agatstein*      **Date** September 20, 2023

28